### HESKETT, ESTATE OF, In Re

Ohio Probate Court, Franklin Co

Decided Jan 1, 1932

Claude Bartlett, Columbus, for defendant, Ralph Y. Struble.

Weinland, Kahle, Atwood & Richards, Columbus, for plaintiff.

### OPINION

By McCLELLAND, J.

This matter comes before this court for hearing upon a demurrer filed· to the petition or application on behalf of the representatives of Ralph Y. Struble, deceased.

The petitioners ask that the Probate Court require the executrix of the estate of William E. Heskett, deceased, to retain in her hands as such executrix, a sufficient amount of the assets of the estate to meet the claims of the petitioners, as and when the same become payable. In this case the claims are those which may fall due in the future under and by virtue of the terms of a ninety-nine year lease, renewable forever.

The facts of the case are as follows:

Ralph Y. Struble, at the time of his death was the owner of the fee to a certain piece of real estate situated in Columbus, Ohio, the description of which is set forth in the petition filed herein.

On May 13, 1929, Ralph Y. Struble died, a resident of Knox County, Ohio, and on May 20, 1929, his will was admitted to probate in the Probate Court of Knox County; and on the same date, Charles E. Ackerman was appointed executor of his estate, and qualified according to the statute. An authenticated copy of his will has been admitted to probate in the Probate Court of Franklin County, Ohio.

The said Ralph Y. Struble, during his lifetime, to-wit, on or about August 26, 1916, leased to William E. Heskett, the above mentioned parcel of real estate for a term of ninety-nine years, renewable forever, upon an annual rental payable monthly. The lease contains the following quotations:

"Said lessee in consideration of the lease and demise of said premises to him, as aforesaid, by said lessor and in consideration of the covenants and agreements herein contained, hereby expressly covenants and agrees with said lessor that he will well and truly pay to said lessor, during the term hereby granted, and during any renewal or renewals thereof, without any deduction of any kind whatsoever, and according to the true intent and meaning of these presents, the rents herein reserved to said lessor in the manner and form at the time herein stipulated.

"And it is further hereby expressly agreed that the said lessor shall have a first lien for the payment of the rents herein provided for, and for the faithful performance of each and every covenant and condition of this lease upon the part of the said lessee to be done and performed upon the entire estate and interest of the said lessee in the real estate hereby demised and the improvements now upon or hereafter erected and put upon said real estate by said

lessee, and the same is hereby made subject to, and the estate of said lessee is hereby charged with, a lien prior to all other liens hereafter created upon said real estate, improvements, and the estate and interest of said lessee, for the faithful and prompt payment and performance of each and all of the rents, covenants and conditions herein contained."

The lease also contains the following condition:

"As a part of this contract of lease, and especially in consideration of the due performance of the covenants and conditions contained herein on the part of the lessee to be kept and performed, it is covenanted and agreed that the lessee shall have the right, privilege, and option to purchase said premises, on any monthly rent paying date, in the manner and form hereinafter provided, for a consideration of Ninety-five Thousand Three Hundred and Twenty-one and 60/100 Dollars ($95,321.60) prior to September 1 , 1931, and for a consideration of One Hundred and Seven Thousand Three Hundred and Twenty-one and 60/100 Dollars ($107,321.60) at any time after September 1, 1931."

The closing paragraph of the said lease contains the following condition:

"It is hereby expressly agreed and covenanted that this case and each and every article, clause, and thing therein contained on the part of the said lessor and lessee respectively to be done, kept or performed shall be considered and held to run with the land and shall extend to and be mutually binding upon said respective lessor and lessee and their respective heirs, executors, administrators and assigns."

The lease also contains the usual clauses regarding forfeiture, payment of taxes, insurance, and other charges, together with the usual clause relating to reconstruction in case of fire.

The petition does not disclose that there were any existing defaults in the performance of any of the terms, or conditions of said lease at the death of the lessee, nor is there any allegation that there were any existing defaults in the performance of any of said terms at the time of the filing of the application.

We therefore assume that there exists at the time of the filing of this application, no defaults in the performance of the terms of such lease, but that all of the terms

thereof have been complied with up until the date of the filing of the petition.

The record discloses that the lessee, William E. Heskett, died September 1, 1930, leaving a last will and testament, which will was duly admitted to probate in the Probate Court of Franklin County, Ohio, on September 17, 1930, and that on said date, Ada Heskett, his widow, was appointed and qualified as the executrix of said will, and that she was, at the time of the filing of the petition, qualified and acting as executrix of such will, that she had taken possession of the assets of said estate, and that there is in her possession personal property in the amount of $73,000.00, all of which was owned by the said William E. Heskett at the time of his death.

In order that there be no mistake as to the claims of the petitioners herein, we quote as follows, from the amended petition of the claimants:

"The petitioners further show to the court that, by virtue of the terms, conditions and provisions of said lease, and the terms and provisions of said last will and testament of Ralph Y. Struble, deceased, these petitioners are entitled to the amounts to be paid monthly by the said lessee under said lease, and these petitioners are further entitled by virtue thereof to have the terms, conditions and provisions of said lease observed and performed in accordance with the terms thereof, from time to time; that these petitioners have a right of action for such payments that will accrue more than 18 months after the date of the administration bond herein or the qualification of the executrix of the estate of William E. Heskett, for which claim the estate of William E Heskett is obligated in the respects hereinbefore set forth."

The petitioners base their claim on §10748 GC, which contains the following provision:

"A creditor whose right of action does not accrue within eighteen months after the date of the administration bond, may present his claim to the court from which the letters issued at any time before the estate is fully administered. If, on examination thereof, it appears to the court that the claim is justly due from the estate, by consent of the creditor and executor or administrator, it may order the claim to be discharged, as if due after discounting interest, or that the executor or administrator retain in his hands sufficient to satisfy it. If an heir of the deceased, or devisee or others interested in the estate, offers to give bond to the alleged creditor, with sufficient surety or sureties for the payment of the demand, in case it be proved to be due from the estate, the court may order such bond to be taken, instead of ordering the claim to be discharged, or requiring the executor or administrator to retain assets as aforesaid."

Upon examination of the authorities cited in the briefs of the counsel for the respective parties, and also upon the examination made by the court, we find that the above named statute has never been construed by, nor has a similar case been presented to the courts in this state. We are therefore compelled to rely upon the decisions of the courts of other states which have construed statutes similar to that of our own state.

Before examining the decisions of courts outside of Ohio, it may be well to determine, if possible, the intent of the legislative authority enacting the above named statute. Upon examination thereof, we find the statute gives the Probate Court the authority first to order the claim to be discharged, as if due after discounting interest. It seems that the legislature had in contemplation such a claim which would be subject to computation as if due. If there were the intent of the legislature, it is apparent it contemplated such claims as have a definite time for maturity or which are certain to fall due.

We feel that this position is upheld by an eminent authority on the matter of probate law. §393 of Woerner on American Law of Administration, reads as follows:

"Claims not matured.—In accordance with the policy of speedy settlements of the estate of deceased persons, aimed at in most of the statutory provisions of the American States, most of them enable debts, payable, according to the contract entered into by the deceased, at a future time, to be presented to the administrator and adjusted before their maturity. Provisions to this effect are found in the statutes of Alabama * * * Ohio, * * *. Some of these statutes provide also for the treatment of contingent claims, which will be more fully considered later on. To be proved and allowed as subsisting claims, these unmatured claims here mentioned must constitute absolute debts running to certain maturity, such as promissory notes and the like. In Missouri unaccrued rent under a covenant to pay rent was at one time held to be a demand entitled to be proved against the

lessee's estate as an unmatured claim, but this holding was overruled, and it is there held, as well as in other states generally, that unaccrued rent is not so provable, being held to be neither debitum nor solvendum— never payable if the lessee should be evicted before the day on which it is payable, hence treated and enforceable as a contingent claim. Reason and the trend of authorities seem clearly to support this view."

Relying on the above named authority, we are of the opinion that the above statute contemplates only such ▇▇▇▇▇▇▇ ▇ claims as have a definite time for maturity, and which are certain to fall due.

After a most careful examination of the authorities, we find that the case more nearly parallel with the one at bar, is that of Bowler v Emery, 29 R. I. 310. The question raised in that case by a bill of exceptions, was whether or not the rent not yet due for the unexpired term of the lease, came within the meaning of §922, of the Court and Practice Act of R. I., which provides as follows:

"A person who has a contingent claim against a deceased person which cannot be proved as a debt within the time allowed for filing claims may file his claim in the office of the clerk of the Probate Court within the time allowed for filing claims. If, upon examination, it appears to the court that such claim may become justly due from the estate, the Probate Court shall order the executor or administrator to deposit in the registry of the court assets sufficient to satisfy such claim or its proportionate share in case of insolvency of the estate."

We must note the similarity of the wording of the above quoted statute, to the statute of Ohio, under which the authority of this court is invoked. The Ohio statute provides that a creditor, whose claim does not accrue within the eighteen months provided by the statute, may make his claim in the Probate Court, while on the other hand, the statute of R. I. provides that a person who has a contingent claim may invoke the assistance of the Probate Court.

We must also note the dissimilarity of the two statutes. A contingent claim is one which is not sure to fall due in the future, but which is dependent upon some event not yet determined. It seems therefore that the statute of Ohio is somewhat more restricted in its application than the

one interpreted by the court above named.

Counsel for the claimants in the above named case cited a number of cases to prove that the obligations falling due under a long-time lease were contingent claims under that statute. The court, in discussing this matter uses the following language:

"In none of the cases above cited were assets of the estate allowed to remain in the hands of the executor to indemnify him against possible future breaches of covenants to pay rent, make repairs, etc., unless upon the application of the executor himself for his own protection. In none of the cases was such an executor himself the residuary legatee; and in each case where the executor was allowed to retain assets for his own protection, it was found by Byrne, J. (In re: Nixon, supra), after a careful review of the authorities to be a case where the leasehold interests of the testator vested in the executor so that there would be privity of estate between the executor and the lessor."

We conclude therefore, that inferentially at least, the court should hold that there must be privity of estate in order to bind the successor.

The court then, in further discussing the matter uses the following language:

"The only case cited where the lessor directly and on his own behalf made application for administration of the estate and for an order to have assets impounded for his protection against possible future breaches of covenant to pay rent, to make repairs, insurance, etc., was the case of King v Malcott, 9 Hare, 692; and in this case the claim was dismissed. The opinion of Vice-Chancellor Turner is so distinctly illuminating as to the principles applicable to a possible future liability under covenants for payment of rent, etc., as distinguished from a strict contingent claim, that we quote freely from said opinion as follows (pp. 694-5): "The question is, whether the plaintiff, who is the assignee of the reversioner of this demise, is now entitled to have the testator's assets thus impounded, for securing himself against possible breaches of the covenants. There has hitherto been no breach of covenant upon which any legal debt is due. No action would now lie against the executors for the purpose of compelling payment of any rent in arrear, or any damages for repairs. Not only is there no rent due, but there is no certainty that anything

ever will be due on any of these covenants; for if the rent be paid at the day, and if the other covenants be duly observed, no action will ever lie upon any of them. This case is therefore readily distinguishable from the cases which have been mentioned. Where there has been a bond or covenant for the absolute payment of a certain sum of money, there the money must become due and must become due on the bond or covenant." * * *

"Why should the lessor have any such right as he claims in this case? How can it be the result of the relation between landlord and tenant? The landlord has not bargained with his tenant that the tenant's assets, or any fund whatever should be impounded for the purpose of securing his rent, or the due performance of his covenants. He has contracted for no such security. For the rent and for the performance of the covenants, he looks to the personal security of the lessee, or to the rights which he has expressly reserved to himself over the subject of the demise; and farther than that he can not proceed at law; why should a court of equity give a more extended effect to the obligation contracted between a landlord and tenant than is given by a court of law."

It is not suggested that this case has ever been overruled or even doubted, and it is cited with approval in the late case of In re: Nixon, L. R. 1 Ch. Div. (1904) 638, at p. 646:

"I should feel myself bound to follow an established practice, although there was no authority for it in the way of direct decision, or in the way of statutory enactment, but as matters stand there is no such practice established in a case like the present. Notwithstanding the industry of counsel, no case has been produced by which it can be shown that assets have ever been retained unless in a case where there is privity of estate between the executors and the lessors. It is quite true that the real state of the facts in some of the authorities is not positively ascertainable. So far as appears none of the decisions relate to a case like the present where the executors have no privity of estate with the lessor. It is quite clear that, if the court makes an order distributing this 65,900£ the executors will be under no liability, to the lessors should they hereafter be sued. It also, I think, may be taken as clear that there is no statute which requires any fund to be set apart for indemnity for the

protection of the executors. In my opinion the authorities only show that it is necessary to do so where there is privity of estate.

"Then it is suggested (and I have not heard any good argument to the contrary) that the reason why, when there is privity of estate, something is set apart to protect the executors, is because the administration of the estate by the court would not prevent an executor in possession of his testator's leaseholds from being sued as assignee under the lease. That does appear to be a ground for differentiating the one class of case from the other. To adopt a contrary view and to seek to indemnify the executors against possible future action on the part of the lessors, and to set apart such a sum as might be required for that purpose in an estate of this kind would be or might be virtually, to lock up a very large fund for an indefinite number of years, really and truly only to preserve a fund in favor of persons who have no present claim. The lessors have not by virtue of their contracts between landlord and tenant bargained for any right to have property retained out of the testator's estate to answer future liabilities. I think, therefore, on the whole, that I am justified in saying that in a case like the present a fund ought not to be retained to the detriment of the beneficiaries under the will."

We now come to the covenants of the lease, the essential ones of which, are quoted hereinbefore. We are cognizant of the fact that the lease provides by its terms, that the covenants thereof shall be binding upon the lessees, his heirs, executors, administrators and assigns. The will of the lessee however, devises the property to his widow, and not to his personal representative.

Our attention is also directed to the law of Ohio, which provides that leases for ninety-nine years, renewable forever, shall be subject to the same laws of descent as the estates in fee. We also find that the above named case of Bowler v Emery, involves a lease of Ohio real estate. Inasmuch as the application of the law in that case is so very similar to what we believe is the application of the law in the case at bar, we quote from the opinion on pages 317, 318, as follows:

"In view of the rule laid down in the case of In re: Nixon, supra, to the effect that in order for a covenant for payment of future rent to be binding upon the ex-

ecutor, there must be privity of estate between the lessor and the executor, it is well to recall for a moment the form of the covenant in the lease here. The lease perpetually demises to the lessees 'their heirs and assigns' the property described. The covenants read as follows: and the said Thomas J. Emery and John J. Emery for themselves, their heirs and assigns do hereby covenant, promise and agree to and with the said Louise F. Bowler, her heirs and assigns that the said Thomas J. Emery and John J. Emery, their heirs and assigns, shall well and truly pay to the said Louisa F Bowler, her heirs and assigns, the "rent as stated' with further covenants for 'themselves, their heirs and assigns' to pay taxes, levies and assessments, etc., to effect insurance. Nowhere does the word executors appear in the entire instrument. This perpetual lease was made in Ohio, where all the parties then resided and is to be governed as to its legal effect by the laws of Ohio, which provide in effect that such estates 'shall be subject to the same laws of descent as estates in fee are subject to by the provisions of this chapter'." (§4181 Ohio statutes).

"This estate therefore passed directly to Mrs. Emery as residuary devisee under her husband's will, and the executor took no interest whatever therein. It did not become assets in the hands of the executor as in the case of the ordinary lease for years which is commonly made to executors, administrators and assigns, and never goes to the heirs as such at all. We find then in this case that there never was any privity of estate between the lessor or her assigns (the appellants) and Mary M. Emery as 'executrix'; the privity that now exists is between the appellants as assigns of the original lessor and Mary M. Emery 'as residuary devisee,' under the will and tenant under the lease. So that this case comes within the rule laid down 'In re: Nixon, L. R. 1 Ch. Div. (1904) 646 (supra). No case is cited from Ohio where the question of the liability of the executor for payment of future rent is settled. Only two cases from Ohio are cited, viz: **Taylor v DeBus, 31 Oh St 468, and Smith v Harrison, 42 Oh St 180'."

From the reasoning of the court in the above opinion we are compelled to conclude that inasmuch as the testator devises the lease to his widow, there is no privity of estate between the █ original lessor or anyone holding under him, and the personal representative of the deceased lessee, and that the terms of the lease are not binding upon his personal representatives for any defaults occurring after the death of the decedent, and after he has ceased to enjoy the benefits thereof.

It is also urged by the applicants or petitioners that the terms of the lease, which provide that the obligations thereof shall be binding upon the lessees, executors, administrators and assigns, that the personal representative of the lessee is responsible for the obligations of the lease until the expiration thereof.

Although the lessee under consideration provides that the obligations thereof shall be binding upon the lessees, executors, administrators and assigns, it might be argued that the two cases are not parallel in that respect. In determining this question, we can do no better than to follow the argument of the court covering this point, and we quote from p. 319 of the decision as follows:

"We are not, however, without authority on this point. It has been repeatedly decided in Pennsylvania, that a perpetual covenant to pay ground-rent does not survive against executors or administrators (although named in the covenant), except as to the rent which accrued in the lifetime of the decedent, and that the rents which accrued subsequent to the death of the covenantor are not payable out of his personal estate.

"In Quain's Appeal, 22 Pa. St. 510, the court says, p. 512:

"Lowrie, J.—In the distribution of the estate of Andrew M. Quain, deceased, the Orphans' Court allowed a claim for thirty months' ground-rent of a lot granted to the decedent on perpetual lease, and which, on his death, descended to his heirs. One year of this rent became due in his lifetime, and was properly charged. The question relating to that which accrued afterwards is not so plain.

"We are of the opinion that the principle of Torr's Estate, 2 Rawle, 250, and also the principle of Callahan v Dickinson, 19 State R. 227, exclude this part of the claim. Does a ground-rent covenant survive against executors and administrators? In its usual form it binds heirs, executors administrators, and assigns; but still this may be satisfied, as to executors and administrators, if they pay the rent which accrued in the decedent's lifetime.

"It is a perpetual covenant, and it is totally impracticable to require it to be

performed by executors and administrators, for their office is not perpetual. If we retain the perpetuity of the covenant as against them, even with the restriction that they are to be liable only when the resort to the land is ineffectual, we still prevent all distribution of the estate in their hands; and, as all the lands of the decedent are assets for the payment of debts, we constructively charge the rent of a single lot upon all his lands.

"Nor will it do to hold them liable until the final settlement of the estate. If that suggestion means until all other matters are ready to be settled, then it takes away at once the character of perpetuity belonging to the covenant, and makes its duration, as against the personal estate, to depend upon the accident of the administrator's diligence, or of the involved or simple nature of the estate. If it means until the final settlement of the whole estate, then this perpetual covenant postpones it forever. This cannot be; for the law intends the office of executor or administrator to terminate as soon as possible. It cannot be prolonged on account of perpetual covenants.

"Such a prolongation, or such a liability, could not have been contemplated at the creation of the ground-rent. The grantor of the land cannot be presumed to have then placed any value on such a covenant; for the personal covenant of the original grantee is as nothing in a series of tenants lasting forever. The real security is the covenant running with the land and encumbering it; and this is the essential reliance of the owner of the rent. It is an absolute obligation, as against the administrators, or it does not bind them at all. Suppose it absolute; then the duty must be fully performed by perpetual payment, or else it must be discharged by a satisfaction or commutation; and in this latter case the rents would be discharged and the heir released, a result which is certainly unintended. It is a covenant payable, in the contemplation of the parties, out of the profits of the land; and it would be entirely unreasonable that the law should hold the administrator for the rent when it gives the land to the heir.

"The doctrine of this case was considered and affirmed in Williams' Appeal, 47 Pa. St. 283, 289 et seq. Although holding that as the executor was named in the covenant, suit might be brought against him for subsequent breaches; but the recovery would be restricted to the land bound by the covenant. It therefore fully affirms the doctrine of Quain's Appeal that the personal estate of the covenantor is not liable.

"We think the doctrine of these cases is fully applicable to the rights of the appellants under this lease; that the personal estate of the testator is not liable for future rent, and that the lessor or her assigns can only look to the land bound by the covenants, upon which a preferred lien is expressly reserved in the lease; and to the heirs and assigns of the lessee, hereafter, in case rent should remain unpaid in violation of the covenant.

"If then, the executor as such, and through the executor, the personal estate is not liable, there is no ground for the application made by the appellants for the retention of, assets by the executor, as claimed in these proceedings."

The court then concludes that the future installments of rent which might become and remain unpaid, do not constitute a claim against the estate under §922 of the Court and Practice Act of the state of Rhode Island.

Inasmuch as the statute of Rhode Island is broader in its scope than the statute of Ohio, and inasmuch as the court has decided that the Rhode Island statute does not contemplate claims falling due in the future under a ninety-nine year lease as contingent claims, we must conclude that the Ohio statute, which is less inclusive, does not contemplate the protection of such claims or the creditors holding same.

We now come to another phase in the matter, which involves the practicability of sustaining the claim of the applicant.

It is not certain that any of the future installments under the lease in question will ever become absolute liabilities. The property might be taken through an appropriation proceeding, or, it might be purchased under the terms of the purchase clause in the lease; there is no certainty that the property would ever be destroyed by fire, or, that the buildings would have to be replaced under the terms of the lease. There is no certainty that the taxes will ever become delinquent, and there is no way of computing the amount of the taxes which may be assessed in the future and in our opinion, it would be practically impossible for the court to arrive at any figure or amount which it would require the executor to set aside to meet the mass of uncertainties which might fall due in the future.

Should the lease in question have been

for only a short term of years, this objection might not be so important, but we have before us a lease for ninety-nine years, renewable forever, and it is our opinion the intention of the legislature was not to require the court to do an impossible thing.

There is also another phase in the matter which has come to our attention, and that is, that the lease provides that the covenants therein shall be covenants running with the land, and that the lessor has reserved a lien upon the leasehold as security for the performance of the covenants of the lease.

Although the lessee provides that the obligations of the lease shall be binding upon his executors and assigns, we must conclude he intended that the leasehold should be the security for the performance of the covenants of the lease, and that his personal representatives should not be held for any defaults occurring after the death of the lessee.

Another reason why the executrix should not be required to set aside a fund to provide for the obligations falling due in the future, is that she, as such executrix, does not have control, possession, or ownership of the leasehold in question. The lessee has devised this to his widow. It is a mere coincidence that the widow is also the executrix of his will, one as an individual, and the other as an officer of the court. The property is not passed to the officers of the court, but is passed to the individual, and the Probate Court therefore, has no control over the estate except as may be necessary to pay the debts of the decedent.

As we have stated hereinbefore, the claims falling due in the future are not debts of the estate for which the property could be sold. That being the case, the Probate Court has no control whatsoever over the property in question.

We therefore conclude that obligations falling due in the future, under the term of the ninety-nine year lease, renewable forever, as set forth in the complaint filed herein, are not claims as contemplated by the statute under consideration; that the complainant has not stated facts sufficient to invoke the assistance of the court, and that therefore, the demurrer of the executrix will be sustained.